## UNITED STATES FEDERAL DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## AT DAYTON

| | |
|---|---|
| **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY BENEFIT TRUST**<br>1470 Worldwide Place<br>Vandalia, OH 45377 | **CASE NO. 3:22-cv-179** |
| **and** | **JUDGE** |
| **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY PENSION TRUST**<br>1470 Worldwide Place<br>Vandalia, OH 45377 | **COMPLAINT FOR MONEY DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF, AND ATTORNEYS' FEES FOR VIOLATIONS OF ERISA** |
| **and** | |
| **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY ANNUITY TRUST**<br>1470 Worldwide Place<br>Vandalia, OH 45377 | |
| **Plaintiffs,** | |
| **v.** | |
| **C&C REINFORCING LLC**<br>C/O Statutory Agent: Curtis Hollywood<br>7187 Wyandot Lane<br>Liberty Township, OH 45044 | |
| **and** | |
| **CURTIS HOLLYWOOD**<br>7187 Wyandot Lane<br>Liberty Township, OH 45044 | |
| **Defendants.** | |

## STATEMENT OF THE CASE

1.     Plaintiffs Iron Workers District Council of Southern Ohio & Vicinity Benefit Trust, Iron Workers District Council of Southern Ohio & Vicinity Pension Trust, and Iron Workers District Council of Southern Ohio & Vicinity Annuity Trust (collectively the "Trusts" or "Plaintiffs"), bring this action against C&C Reinforcing LLC ("C&C") for its violations of Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145, and against Curtis Hollywood, C&C's owner and principal officer, for breaching fiduciary duties to the Trusts and engaging, as a party-in-interest, in prohibited transactions under ERISA. (C&C and Mr. Hollywood are hereinafter referred to collectively as the "Defendants".) Plaintiffs seek to recover from Defendants jointly and severally: unpaid fringe benefit contributions, liquidated damages, interest, equitable relief, reasonable attorneys' fees and collection costs, and post-judgment interest pursuant to 28 U.S.C. § 1961 on all monetary relief granted in this case.

## PARTIES – BENEFIT TRUST

2.     Plaintiff **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY BENEFIT TRUST** ("Benefit Trust") was created pursuant to a written Agreement and Declaration of Trust ("Benefit Trust Agreement"), entered into on August 1, 1952 and amended from time to time, between various labor organizations affiliated with the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO ("Participating Unions") and various employers that have collective bargaining agreements with the Participating Unions. A true and accurate copy of the Benefit Trust Agreement is attached as **Exhibit 1**.

3.     The Benefit Trust was created for the purpose of providing and maintaining life insurance, weekly accident and sickness benefits, hospitalization coverage, medical and surgical coverage, and dental coverage for the benefit of participating employees and their families.

4.     The Benefit Trust is an employee welfare benefit plan and employee benefit plan within

2

the meaning of Sections 3(1) and 3(3) of ERISA, 29 U.S.C. §§ 1002(1) and (3).

## PARTIES – PENSION TRUST

5.      Plaintiff **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY PENSION TRUST** ("Pension Trust") was created pursuant to a written Agreement and Declaration of Trust ("Pension Trust Agreement"), entered into on October 30, 1962 and amended from time to time, between various labor organizations affiliated with the Participating Unions and various employers that have collective bargaining agreements with the Participating Unions. A true and accurate copy of the Pension Trust Agreement is attached as **Exhibit 2**.

6.      The Pension Trust was created for the purpose of providing pension, retirement, and death benefits for participating employees and their beneficiaries.

7.      The Pension Trust is an employee pension benefit plan and an employee benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, Title 29 U.S.C. §§ 1002(2) and (3).

## PARTIES – ANNUITY TRUST

8.      Plaintiff **IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY ANNUITY TRUST** ("Annuity Trust") was created pursuant to a written Agreement and Declaration of Trust ("Annuity Trust Agreement"), entered into on April 27, 1971 and amended from time to time, between various labor organizations affiliated with the Participating Unions and various employers that have collective bargaining agreements with the Participating Unions. A true and accurate copy of the Annuity Trust Agreement is attached as **Exhibit 3.**

9.      The Annuity Trust was created for the purpose of providing annuity benefits for participating employees and their beneficiaries.

10.     The Annuity Trust is an employee benefit plan within the meaning of Section 3(3) of ERISA, Title 29 U.S.C. § 1002(3).

## PARTIES – C&C

11.     Upon information and belief, C&C is headquartered and incorporated in the State of Ohio.

12.     C&C is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

## PARTIES – CURTIS HOLLYWOOD

13.     Upon information and belief, Mr. Hollywood is an owner and officer of C&C, and is a resident of the State of Ohio.

14.     Upon information and belief, Mr. Hollywood, in his capacity as an owner and/or officer of C&C had the power and authority to spend C&C's money on appropriate business expenses and pay C&C's creditors, including the Trusts.

## JURISDICTION, VENUE, AND STANDING

15.     Pursuant to Sections 502(a)(3), (e)(1) and (f) of ERISA, 29 U.S.C. §§ 1132(a)(3), (e)(1), and (f), the United States District Courts have exclusive jurisdiction over this case, without regard to the amount in controversy or the citizenship of the parties, to enforce the provisions of ERISA, or the terms of the plan, or to remedy violations of Section 515 of ERISA, 29 U.S.C. § 1145.

16.     The Trusts' principal place of operation and administration is located in the City of Vandalia, Montgomery County, State of Ohio, and as such, is within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. § 115(b)(1).

17.     These causes of action are properly brought in the United States District Court for the Southern District of Ohio, Western Division, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides that actions to redress violations of ERISA may be brought in a District Court of the United States where the plan is administered, and process may be served in any other district where a defendant resides or may be found.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the causes of action occurred in the United States District Court for the Southern District of Ohio, Western Division.

19.     The Trusts have standing to bring this suit in their own names pursuant to Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1), which provides that the Trusts may sue, as entities, for the relief sought in this case.

## THE TRUSTS ARE MULTIEMPLOYER PLANS WITHIN THE MEANING OF ERISA

20.     The Trusts are maintained pursuant to one or more collective-bargaining agreements ("CBAs") between one or more labor organizations and more than one employer. The CBAs require more than one employer to contribute to the Trusts.  Hence, the Trusts are multiemployer plans within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A).

## RELEVANT COLLECTIVE-BARGAINING AGREEMENT

21.     At all times relevant to this suit, C&C has been bound to the terms and conditions of CBAs with Iron Workers Local No. 44 ("Local 44").  Further, at all relevant times C&C has been bound to a participation agreement ("Participation Agreement") binding it to the Benefit Trust Agreement, the Pension Trust Agreement, and the Annuity Trust Agreement (collectively referred to as the "Trust Agreements"). A copy of the Participation Agreement signed by C&C on June 1, 2021 and accepted by the Trusts on November 9, 2021 is attached as **Exhibit 4**.

 22.     Pursuant to the Participation Agreement, C&C must pay the wage and fringe benefit rates provided for in the CBAs with Local 44, which is the Participating Union affiliated with the International Association of Bridge, Structural, and Ornamental Iron Workers. The CBAs establish the terms and conditions of employment of C&C's bargaining unit employees covered thereunder.

5

23.     Among the terms and conditions of employment established by the CBAs is the requirement that C&C contribute a certain amount of money per hour for each covered employee to the Trusts as provided by the CBAs.

24.     The Participation Agreement binds C&C to the Trust Agreements and all provisions therein. The Participation Agreement also binds C&C to make contributions to the Trusts pursuant to the terms and rates set forth in the CBAs.

## TRUST AGREEMENTS AND COLLECTIONS POLICY

25.     Pursuant to Article I, Section 6 of the Benefit Trust Agreement and Article III, Section 6 of the Pension Trust Agreement and Annuity Trust Agreement, Employer Contributions "are Fund Assets at the time that they become due as stated in the collective bargaining agreements between the Unions and the Employers, the participation agreements, and [the] Trust Agreement[s]."

26.     Pursuant to Article I, Section 15 of the Benefit Trust Agreement and Article III, Section 15 of the Pension Trust Agreement and Annuity Trust Agreement, "Fund Assets" include:

> [T]he sums of money that have been or will be paid or which are due and owing to the Trusts by the Employers as Employer Contributions required by the collective bargaining agreements between the Unions and the Employers, the participation agreements, the Trust Agreements, as well as signed stipulations (including, but not limited to settlement agreements, promissory notes, and judgments), or applicable law.

27.     Pursuant to Article III, Section 10 of the Benefit Trust Agreement and Article VIII, Section 10 of the Pension Trust Agreement and Annuity Trust Agreement, a contributing employer's owners, officers, employees, agents, and/or representatives may be held personally liable for failing to make Employer Contributions, which as a result of their delinquent payment have become Fund Assets, providing as follows:

> Not by way of limitation, any of an Employer's officers, owners, employees, agents, and/or representatives, however characterized, who exercise discretion and/or control with respect to the management, disposition, payment, or nonpayment of Employer Contributions that are due and owing to the [Trusts] (or

6

any Fund Assets) shall be deemed "fiduciaries" of the [Trusts] within the meaning of [ERISA], including but not limited to 29 U.S.C. §1002(21)(A)(i), and shall be personally liable to the [Trusts] for the unpaid contributions, as well as all other amounts and damages resulting from the breach of fiduciary duty pursuant to ERISA, including but not limited to 29 U.S.C. §1109.

28.     Pursuant to Article V, Section 4 of the Benefit Trust Agreement and Article VI, Section 6 of the Pension Trust Agreement and Annuity Trust Agreement, the Trustees are empowered to promulgate such rules and regulations as may in their discretion, be deemed proper and necessary for the sound and efficient administration of the Trusts.

29.     Pursuant to this power, the Trusts' Board of Trustees collectively approved a Statement of Policies and Procedures on Delinquency Collections ("Collections Policy"). A copy of this document, and its amendments, is attached as **Exhibit 5**.

30.     The Collections Policy, and all other policies of the Trusts, is binding on C&C through the Trust Agreements.

31.     Pursuant to the Trust Agreements and the Collections Policy, to which C&C is bound through the Participation Agreement, C&C is assessed liquidated damages and interest when it delinquently remits fringe benefit contributions.

**COUNT I – DEFENDANT C&C HAS DELINQUENTLY REMITTED ITS CONTRIBUTIONS TO THE TRUSTS AND HAS FAILED TO PAY THE REQUIRED LIQUIDATED DAMAGES AND INTEREST IN VIOLATION OF SECTION 515 OF ERISA, 29 U.S.C. § 1145**

32.     The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

33.     C&C has employed workers whose terms and conditions of employment are set forth in the CBAs.

34.     Among the terms and conditions of employment in the CBAs is the requirement that C&C make fringe benefit contributions to the Trusts on behalf of covered employees.

35.     C&C has failed to timely make certain fringe benefit contributions to the Trusts on behalf of their covered employees, as is required by the terms of the Trust Agreements and the Collections Policy.

36.     C&C's failure and refusal to timely pay fringe benefit contributions, liquidated damages, and interest as required under the Trust Agreements and Collections Policy is a violation of Section 515 of ERISA, 29 U.S.C. § 1145.

<u>THE BENEFIT TRUST'S CLAIMS AGAINST DEFENDANT C&C</u>

37.     The allegations contained in the paragraphs of this Complaint immediately preceding this paragraph are alleged as if fully restated herein.

38.     Article III of the Benefit Trust Agreement, to which C&C has agreed to be bound by virtue of signing the Participation Agreement, obligates that C&C timely remit all required fringe benefit contributions, pay liquidated damages and interest to the Benefit Trust if it delinquently remits contributions.

39.     Further, Article I(5) of the Collections Policy, as amended, requires that C&C pay liquidated damages and interest to the Benefit Trust if it delinquently remits contributions.

40.     C&C has failed and refused to make timely employer contributions to the Benefit Trust as is required by the Benefit Trust Agreement and the Collections Policy.

41.     As a result of C&C's failure and refusal to make timely employer contributions to the Benefit Trust, pursuant to Article III of the Benefit Trust Agreement and Article I(5) of the Collections Policy, as amended, it owes to the Benefit Trust liquidated damages and interest, which have not been paid.

42.     Based on the documents and information available to the Trusts, C&C owes the Benefit Trust **$11,780.52** in delinquent employer contributions, liquidated damages, and pre-judgment

interest as follows, for the months of February 2022, March 2022, and May 2022:

| | |
|---|---|
| **Delinquent employer contributions:** | **$10,314.99** |
| **Liquidated damages:** | **$1,119.11** |
| **Pre-judgment interest:** | **$346.42** |

43.     C&C may also owe additional amounts for delinquent contributions, liquidated damages, and/or interest for hours its covered bargaining unit employees worked, but which it did not report to the Trusts, including, but not limited to the months of February 2022, March 2022, and April 2022 ("Unreported Hours").

44.     The Benefit Trust has been forced to bring this legal action to collect the delinquent amounts owed by C&C, and the Benefit Trust is entitled to its costs and reasonable attorneys' fees pursuant to Article III, Section 8 of the Benefit Trust Agreement, and Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D).

### THE PENSION TRUST'S CLAIMS AGAINST DEFENDANT C&C

45.     The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

46.     Article VIII of the Pension Trust Agreement, to which C&C has agreed to be bound by virtue of signing the Participation Agreement, obligates that C&C timely remit all required fringe benefit contributions, pay liquidated damages and interest to the Pension Trust if it delinquently remits contributions.

47.     Further, Article I(5) of the Collections Policy, as amended, requires that C&C pay liquidated damages and interest to the Pension Trust if it delinquently remits contributions.

48.     C&C has failed and refused to make timely employer contributions to the Pension Trust as is required by the Pension Trust Agreement and the Collections Policy.

49.     As a result of C&C's failure and refusal to make timely employer contributions to the

Pension Trust, pursuant to Article VIII of the Pension Trust Agreement and Article I(5) of the Collections Policy, as amended, it owes to the Pension Trust liquidated damages and interest, which have not been paid.

50. Based on the documents and information available to the Trusts, C&C owes the Pension Trust **$12,748.18** in delinquent employer contributions, liquidated damages, and pre-judgment interest as follows, for the months of February 2022, March 2022, and May 2022:

**Delinquent employer contributions:**     **$11,110.25**

**Liquidated damages:**     **$1,250.76**

**Pre-judgment interest:**     **$387.17**

51. C&C may also owe additional amounts for delinquent contributions, liquidated damages, and/or interest for Unreported Hours its covered bargaining unit employees worked, but which it did not report to the Trusts, including, but not limited to the months of February 2022, March 2022, and April 2022.

52. The Pension Trust has been forced to bring this legal action to collect the delinquent amounts owed by C&C, and the Pension Trust is entitled to its costs and reasonable attorneys' fees pursuant to Article VIII, Section 5 of the Pension Trust Agreement, and Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D).

<u>THE ANNUITY TRUST'S CLAIMS AGAINST DEFENDANT C&C</u>

53. The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

54. Article VIII of the Annuity Trust Agreement, to which C&C has agreed to be bound by virtue of signing the Participation Agreement, obligates that C&C timely remit all required fringe benefit contributions, pay liquidated damages and interest to the Annuity Trust if it delinquently remits contributions.

55.     Further, Article I(5) of the Collections Policy, as amended, requires that C&C pay liquidated damages and interest to the Annuity Trust if it delinquently remits contributions.

56.     C&C has failed and refused to make timely employer contributions to the Annuity Trust as is required by the Annuity Trust Agreement and the Collections Policy.

57.     As a result of C&C's failure and refusal to make timely employer contributions to the Annuity Trust, pursuant to Article VIII of the Annuity Trust Agreement and Article I(5) of the Collections Policy, as amended, it owes to the Annuity Trust liquidated damages and interest, which have not been paid.

58.     Based on the documents and information available to the Trusts, C&C owes the Annuity Trust **$3,205.18** in delinquent employer contributions, liquidated damages, and pre-judgment interest as follows, for the months of February 2022, March 2022, and May 2022:

**Delinquent employer contributions:**          **$2,699.00**

**Liquidated damages:**          **$305.40**

**Pre-judgment interest:**          **$200.78**

59.     C&C may also owe additional amounts for delinquent contributions, liquidated damages, and/or interest for Unreported Hours its covered bargaining unit employees worked, but which it did not report to the Trusts, including, but not limited to the months of February 2022, March 2022, and April 2022.

60.     The Annuity Trust has been forced to bring this legal action to collect the delinquent amounts owed by C&C, and the Annuity Trust is entitled to its costs and reasonable attorneys' fees pursuant to Article VIII, Section 5 of the Annuity Trust Agreement, and Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D).

## COUNT II – PLAINTIFFS ARE EMPOWERED BY ERISA TO REQUIRE DEFENDANT C&C TO SUBMIT TO AN AUDIT

61.     The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

62.     Pursuant to Article III, Section 4 of the Benefit Trust Agreement, and Article VIII, Section 5 of the Pension Trust Agreement and the Annuity Trust Agreement, C&C is required to allow Plaintiffs' authorized agent(s) access to their payroll records for the purpose of a payroll audit.

63.     Pursuant to Article III, Section 8 of the Benefit Trust Agreement, and Article VIII, Section 5 of the Pension Trust Agreement and the Annuity Trust Agreement, Plaintiffs are entitled to enforce their right to a payroll audit by pursuing legal action and obtaining all attorneys' fees and costs incurred.

64.     Plaintiffs are seeking to enforce the terms of said Trust Agreements pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), by obtaining an order requiring C&C to provide access to such records and submit to an audit if Plaintiffs' Boards of Trustees determine such action is necessary.

## COUNT III – PLAINTIFFS ARE EMPOWERED BY ERISA TO REQUIRE DEFENDANT C&C TO POST A SUFFICIENT BOND

65.     The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

66.     Pursuant to the Participation Agreement, all contributing employers must provide a guarantee for the payment of contributions either in the form of a surety bond or cash bond, in an amount specified by the Plaintiffs' Board of Trustees, as a condition to continued participation in the Trusts.

67.     Pursuant to Section III(1) of the Collections Policy, all employers who first become obligated to contribute to the Trusts, on or after January 1, 2010 ("New Employers"), such as C&C,

are required to post a surety bond.

68.     Pursuant to Section III(4) of the Collections Policy, New Employers are required to post a $20,000 surety bond.

69.     Pursuant to Section III(5) of the Collections Policy, the Plaintiffs' Boards of Trustees may, in their discretion, allow other forms of security if posting a $20,000 surety bond prior to participating in the Trusts creates particular challenges for a New Employer.

70.     The Plaintiffs' Boards of Trustees may, in their discretion, permit a New Employer to post a $5,000 cash bond until such time as a $20,000 bond is posted, provided that the New Employer submits reports and pays fringe benefit contributions to the Trusts on a weekly basis. In order to comply, a New Employer must complete a cash bond form and remit the required amount to the Trusts.

71.     C&C had submitted a payment of $5,000.00 in favor of the Trusts and initially provided weekly reports and contributions.

72.     However, C&C has failed to complete and return a bond form, and failed to continue remitting weekly reports and contributions to the Trusts.

73.     Accordingly, C&C is no longer eligible to post a $5,000 cash bond, and instead must post a $20,000 surety bond in favor of the Trusts. C&C is therefore insufficiently bonded in violation of the Trust Agreements, Participation Agreement, and Collections Policy, and Plaintiffs are seeking to enforce the terms of such agreements pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), by obtaining an order requiring C&C to post a sufficient bond.

## COUNT IV –DEFENDANT CURTIS HOLLYWOOD BREACHED HIS FIDUCIARY DUTIES IN VIOLATION OF SECTION 409 OF ERISA, 29 U.S.C. § 1109

74.     The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

75.     Upon information and belief, Mr. Hollywood is an owner and officer of C&C.

76.     Upon information and belief, Mr. Hollywood owns fifty-one percent (51%) of C&C's corporate shares.

77.     Upon information and belief, Mr. Hollywood has authority to contractually bind C&C.

78.     Upon information and belief, Mr. Hollywood has authority to spend money on behalf of C&C.

79.     Upon information and belief, Mr. Hollywood is authorized to sign checks on behalf of C&C.

80.     Upon information and belief, Mr. Hollywood, at all times relevant to this Complaint, chose to pay C&C's other creditors, including himself, rather than remit and pay the contributions owed to Plaintiffs by C&C.

81.     C&C has failed to timely remit fringe benefit contributions leading to the assessment of liquidated damages and interest that C&C also has refused to pay to the Trusts.

82.     Upon information and belief, Mr. Hollywood was responsible for the timely submission of the hourly contribution reports to the Plaintiffs and was responsible for the delinquent submissions of the same.

83.     Upon information and belief, at all relevant times herein, Mr. Hollywood has the power and authority to pay C&C's creditors, including Plaintiffs.

84.     Upon information and belief, at all relevant times herein, Mr. Hollywood has exercised his authority and control with respect to C&C's finances, including making determinations as to which creditors would be paid and in what order.

85. Upon information and belief, at all relevant times herein, Mr. Hollywood directly and personally determined that C&C would not pay Plaintiffs owed fringe benefit contributions, liquidated damages, and interest.

86. Upon information and belief, at all relevant times herein, Mr. Hollywood determined that C&C's assets and monies would be used to pay other creditors, expenses, or that said assets and monies would be diverted to the general assets of C&C, or used for other purposes, besides paying its fringe benefit contributions, liquidated damages, and other amounts owed to Plaintiffs.

87. Upon information and belief, at all relevant times Mr. Hollywood directly and personally determined that C&C's assets would be used for purposes other than the sole and exclusive purpose of providing benefits to Plaintiffs' participants and beneficiaries, defraying Plaintiffs' reasonable expenses, and paying the required contributions, interest, and liquidated damages to Plaintiffs on behalf of their participants.

88. Upon information and belief, Mr. Hollywood is a fiduciary under Article III, Section 10 of the Benefit Trust Agreement, Article VIII, Section 10 of the Pension Trust Agreement and Annuity Trust Agreement, and under Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i) because he exercises (or because he has exercised) discretionary authority and control over C&C and its financial assets, which should have been used to pay amounts owed to Plaintiffs. C&C's financial assets have not been applied to satisfy fringe benefit contributions, liquidated damages, and other monetary amounts that are owed to Plaintiffs, which remain outstanding as alleged herein.

89. Upon information and belief, C&C possesses Plaintiffs' Fund Assets, which it is wrongfully withholding without cause at the behest of Mr. Hollywood.

90. Upon learning of C&C's delinquency and possession of Plaintiffs' Fund Assets, Mr. Hollywood has not taken any corrective action to pay all delinquent amounts.

15

91.    Mr. Hollywood owes fiduciary duties to Plaintiffs and their participants, with such duties being set forth in Sections 404(a), 406, and 408 of ERISA, 29 U.S.C. §§ 1104(a), 1106, and 1108.

92.    Upon information and belief, Mr. Hollywood grossly and deliberately breached his fiduciary duties to Plaintiffs by failing to make C&C remit employer contributions, interest, and liquidated damages to Plaintiffs, and by diverting such amounts for other purposes. In so doing, Mr. Hollywood:

> failed to discharge his fiduciary duties with respect to Plaintiffs solely in the interest of the participants and beneficiaries of the plans: (i) in violation of Section 404(a)(1) of ERISA, 29 U.S.C. §1104(a)(1); (ii) for the exclusive purpose of providing benefits to the participants and beneficiaries of those plans, in violation of Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. §1104(a)(1)(A)(i); (iii) in accordance with the documents and instruments governing those plans, in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. §1104(a)(1)(D); and caused Plaintiffs' participants to suffer a loss of benefits and rights to which they were entitled under the terms of Plaintiffs' plans.

93.    Upon information and belief, by the aforementioned acts, errors, and omissions described herein, Mr. Hollywood has breached his fiduciary duties to Plaintiffs. Pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109, Mr. Hollywood is personally liable to make good to Plaintiffs and their participants for all losses resulting from such breaches.

## COUNT V – DEFENDANT CURTIS HOLLYWOOD ENGAGED IN ONE OR MORE THAN ONE PROHIBITED TRANSACTIONS

94.    The allegations contained in this Complaint's preceding paragraphs are alleged as if fully restated herein.

95.    Mr. Hollywood, in his capacity as a fiduciary to Plaintiffs and as an officer/shareholder of C&C, is a party in interest to Plaintiffs as set forth in Section 3(14) of ERISA, 29 U.S.C. § 1002(14).

96.    Mr. Hollywood is required to contribute to Plaintiffs, bound to the Trust Agreements, and bound to the CBAs, as set forth above, and is a party in interest to Plaintiffs as set forth in Section

3(14) of ERISA, 29 U.S.C. § 1002(14).

97.     Upon information and belief, by diverting, permitting, or allowing the diversion of employer fringe benefit contributions and other monies from Plaintiffs that could have been applied to satisfy C&C's delinquent fringe benefit contributions and other amounts owed to Plaintiffs, Mr. Hollywood dealt with Plaintiffs' assets in his own interest or account or in the related interest or account of C&C over which he has authority and control, in violation of Section 406(b) of ERISA, 29 U.S.C. § 1106(b).

98.     By diverting, permitting, or allowing the diversion of employer fringe benefit contributions and other monies from Plaintiffs for his own interest or for the related interest of C&C, Mr. Hollywood engaged in prohibited transactions under ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this honorable Court grant them the following relief:

### As to Defendant C&C

1.     A declaratory judgment against C&C, finding it bound to the Participation Agreement, the CBAs, the Trust Agreements, and the Collections Policy.

2.     A monetary judgment against C&C in favor of Plaintiffs for all known and owed contributions, interest, and liquidated damages in the amount of **$27,733.88**, and any additional amounts found to be owed for delinquent contributions, liquidated damages, and/or interest for Unreported Hours, including, but not limited to the months of February 2022, March 2022 and April 2022.

3.     A monetary judgment against C&C in favor of Plaintiffs for the attorneys' fees and other costs Plaintiffs incurred in pursuance of this action.

4.     A permanent injunction against C&C, pursuant to Section 502(g)(2)(E) of ERISA, prohibiting future violations of Section 515 of ERISA, 29 U.S.C. §1145 with respect to the Trusts.

5.      A declaratory order from this Court requiring C&C to timely submit all missing contribution reports and to timely submit all such reports in the future.

6.      A declaratory order requiring C&C to permit the Trusts' auditor to examine and review the documents necessary to complete a payroll audit, if the Trusts' Boards of Trustees determine a payroll audit is necessary.

7.      A declaratory order requiring C&C to post a sufficient bond with the Trusts as required by the Participation Agreement and Collections Policy, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

8.      An order directing disgorgement of all ill-gotten gains by C&C, including employer contributions that have been wrongfully withheld from the Trusts.

9.      Post-judgment interest pursuant to 28 U.S.C. §1961.

10.     Such other legal or equitable relief as this Court deems appropriate.

11.     That this Court retain jurisdiction of this cause pending C&C's compliance with its orders.

### As to Defendant Curtis Hollywood

1.      A declaratory order against Mr. Hollywood, finding that he breached his fiduciary duties owed to Plaintiffs.

2.      A declaratory order against Mr. Hollywood, finding that he has engaged in prohibited transactions under ERISA.

3.      A declaratory order finding that Mr. Hollywood is jointly and severally liable with C&C to reimburse the Trusts for all losses resulting from each such breach pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), including all delinquent fringe benefit contributions, interest, liquidated damages, costs, and attorneys' fees, with such known amounts totaling **27,733.88** owed to Plaintiffs, and any additional amounts found to be owed for delinquent contributions, liquidated damages, and/or interest for Unreported Hours, including, but not limited to the months of

February 2022, March 2022 and April 2022.

4.    A monetary judgment against Mr. Hollywood and C&C, jointly and severally, in favor of Plaintiffs for all known or unknown unpaid fringe benefit contributions, interest, liquidated damages, costs, and attorneys' fees, owed by C&C.

5.    An order directing an accounting of all of C&C's delinquent contributions that have not been paid to the Trusts due to Mr. Hollywood's orders or direction, and an accounting of all losses suffered by the Trusts and their participants as a result of Mr. Hollywood's fiduciary breaches and prohibited transactions, with costs of such accounting to be paid by Mr. Hollywood.

6.    A monetary judgment directing Mr. Hollywood to pay to the Trusts all amounts required to recover the losses suffered by the Trusts and their participants, including all rights and benefits to which such participants were entitled to under the Trusts' plans of benefits, as a result of his breaches of fiduciary duty and prohibited transactions.

7.    An order directing disgorgement of all ill-gotten gains by Mr. Hollywood, including employer contributions that have been wrongfully withheld from the Trusts.

8.    Post-judgment interest pursuant to 28 U.S.C. § 1961.

9.    Such other relief as the Court may deem equitable and just under the circumstances.

10.    That this Court retain jurisdiction of this cause pending Mr. Hollywood's compliance with its orders.

Respectfully submitted,

/s/ *Jonah D. Grabelsky*
Joseph C. Hoffman, Jr. (Ohio Reg. No. 0056060)
Joseph D. Mando (Ohio Reg. No. 0082835)
Jonah D. Grabelsky (Ohio Reg. No. 0089009)
Faulkner, Hoffman & Phillips, LLC
20445 Emerald Parkway Dr., Suite 210
Cleveland, Ohio 44135-6029
Phone: (216) 781-3600
Fax:    (216) 781-8839
Email: hoffman@fhplaw.com
Email: mando@fhplaw.com
Email: grabelsky@fhplaw.com

*Attorneys for Plaintiffs Iron Workers District Council of Southern Ohio & Vicinity Benefit Trust, Iron Workers District Council of Southern Ohio & Vicinity Pension Trust, and Iron Workers District Council of Southern Ohio & Vicinity Annuity Trust*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of July 2022, a copy of the foregoing complaint was served via certified mail pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h) on the following:

> Secretary of the Treasury
> Internal Revenue Service
> 1111 Constitution Avenue, N.W., Room 4428
> Washington, D.C. 20224
> Attention:      Employee Plans
>
> Secretary of Labor
> 200 Constitution Avenue, N.W.
> Washington, D.C. 20210
> Attention:      Assistant Solicitor for Plan Benefits Security

> Respectfully submitted,
>
> <u>s/ *Jonah D. Grabelsky*</u>
> Jonah D. Grabelsky (Ohio Reg. No. 0089009)